IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LANCE SHOCKLEY, | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 25-1513 |
| | ) | |
| RICHARD ADAMS | ) | |
|     Warden, | ) | DEATH PENALTY CASE |
| Eastern Reception and | ) | **EXECUTION SCHEDULED** |
|     Diagnostic Correctional Center; | ) | **OCTOBER 14, 2025,** |
| HEATHER COFER | ) | **6:00 PM CST** |
|     Warden, | ) | |
|     Potiosi Correctional Center; | ) | |
| MYLES STRID | ) | |
|     Director, | ) | |
|     Division of Adult Institutions; | ) | |
| TREVOR FOLEY, | ) | |
|     Director, Missouri | ) | |
|     Department of Corrections, | ) | |
|     *Respondents*. | ) | |

**COMPLAINT UNDER 42 U.S.C. § 1983**

**INTRODUCTION**

1. Lance Shockley is scheduled to be executed at the Eastern Reception and Diagnostic Correctional Center in Bonne Terre, Missouri, on October 14, 2025, at 6:00 PM CST.

2. The Missouri Department of Corrections ("MODOC") has denied him the choice of Morgan Shockley and Summer Shockley as spiritual advisors, Morgan Shockley's presence as his spiritual advisor in the execution chamber to touch and pray over him, and Summer Shockley to administer communion and anoint him with oils as the MODOC executes him only because his chosen spiritual advisors are members of his family.

1

3. The condemned have the right to have a spiritual advisor by their side to touch and pray over them as they are executed. *See, e.g., Ramirez v. Collier*, 595 U.S. 411 (2022); *Dunn v. Smith*, 141 S. Ct. 725 (2021).

4. In compliance with the Supreme Court's precedent, the MODOC as a matter of institutional policy allows condemned persons to have their chosen spiritual advisors accompany them in the execution chamber.

5. Indeed, in the last two years, every executed person in Missouri except for one has had his spiritual advisor present during his execution. *See e.g., Missouri death row inmate Kevin Johnson executed for killing police officer in 2005,* Sky News (Nov. 30, 2022) https://news.sky.com/story/missouri-death-row-inmate-kevin-johnson-executed-for-killing-police-officer-in-2005-12758572 (last visited Oct. 9, 2025) ("However, in a first in modern executions in Missouri, [Kevin] Johnson was not alone when he died. The 37-year-old had his spiritual advisor, the Reverend Darryl Gray, beside him.").

6. Furthermore, although not specific or limited to death-sentenced people, MODOC has an established policy concerning spiritual advisors for people in MODOC custody. Ex. A. The policy addresses, among other matters, who may serve as a spiritual advisor and the "qualifications" a person must possess to be able to serve as a spiritual advisor. Ex. A at 2 (D5-3.3(III)(B))2)(d)).

7. MODOC policy explicitly contemplates a situation in which immediate family members, such as the offender's children, serve as spiritual advisors. Ex. A. at 2 (D5-3.3(II)(E)(g)).

8. Under the MODOC policy and past MODOC execution practice, Mr. Shockley has designated two spiritual advisors, Summer Shockley Anagnostopolous and Morgan Shockley, who are his daughters. Mr. Shockley has requested Morgan Shockley be present in the chamber with him as the execution takes place, and Summer Shockley be in the viewing area. Both

Summer Shockley and Morgan Shockley are "spiritual advisors" under the MODOC policy's definition. Morgan Shockley was endorsed by River of Life Church in Van Buren, MO and certified by The Missouri Way. Ex. B; Ex. G. Summer Shockley was ordained by American Marriage Ministries and endorsed by Bluff First Assembly of God Church in Poplar Bluff, MO. Ex. C; Ex. H.

9. Yet, despite Summer Shockley and Morgan Shockley possessing the proper spiritual advisor "qualifications" and MODOC's express policy allowing immediate family to serve as spiritual advisors, MODOC has denied Mr. Shockley's request to have Morgan Shockley in the execution chamber as his spiritual advisor. Ex B.

10. The MODOC's refusal to allow Mr. Shockley's spiritual advisors to be present as the State executes him and as he passes into the afterlife violates his rights under the First Amendment Free Exercise Clause and the Religious Land Use and Institutional Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., because this bar on his spiritual advisors prohibits the free exercise of Mr. Shockley's religion and invades his religious liberty.

11. Mr. Shockley seeks relief under 42 U.S.C. § 1983 to ensure he is executed only in a manner that does not substantially burden the exercise of his sincerely held religious beliefs and does not violate his rights under the First Amendment or the RLUIPA.

## JURISDICTION

12. This Court had jurisdiction under 42 U.S.C. §§ 2000cc-1, 28 U.S.C. §§ 1343, 1651, 2201 and 2202, and under 42 U.S.C. § 1983.

## VENUE

13.  Mr. Shockley will be executed at the Eastern Reception and Diagnostic Correctional Center in St. Francois County, Missouri. Venue thus lies with this Court because it is the district in

which "a substantial part of the events or omissions giving rise to the claim" will occur. 28 U.S.C. § 1391(b)(2).

## PARTIES

14. Petitioner Lance Shockley is a prisoner in the custody of the Missouri Department of Corrections. He is scheduled to be executed at the Eastern Reception and Diagnostic Correctional Center, 2727 Highway K, Bonne Terre, MO 63628, on October 14, 2025, at 6:00 PM CST.

15. Respondent Richard Adams is the Warden of Eastern Reception and Diagnostic Correctional Center and is responsible for ending Mr. Shockley's life. He denied Mr. Shockley's spiritual advisor request for his institution. Ex. K. He is sued in his official capacity.

16. Respondent Heather Cofer is the Warden of Potosi Correctional Center and is responsible for Mr. Shockley's confinement until he is transferred to Eastern Reception and Diagnostic Correctional Center for execution and was involved in the decision to deny Mr. Shockley qualified spiritual advisorship. Ex. F at 2. She is sued in her official capacity.

17. Respondent Myles Strid is the Director of the Division of Adult Institutions of the Missouri Department of Corrections and made the final determination to deny Mr. Shockley qualified spiritual advisorship. Ex. F at 2; Ex. Q; Ex. R. He is sued in his official capacity.

18. Respondent Trevor Foley is the director of the Missouri Department of Corrections, 2729 Plaza Drive, P.O. Box 236, Jefferson City, MO 65102. As director of the department, he is responsible for the management of all Missouri correctional institutions. He is sued in his official capacity.

## PROCEDURAL HISTORY

19. Summer Shockley and Morgan Shockley applied to MODOC to be designated as spiritual advisors for their father, Lance Shockley. Both Summer and Morgan Shockley filled out the MODOC application and provided documentation necessary for their credentialing.

20. MODOC denied Summer and Morgan Shockley's applications to serve as spiritual advisors for Lance Shockley and informed them their applications had been denied because they were family members. *See e.g.,* Ex. F ("Nathan Forbes contacted Morgan Shockley stating that she was not eligible to serve as a Spiritual Advisor to her father, Lance Shockley, because she is immediate family."); Ex. M at 1("[T]he department will allow Mr. Shockley to designate a spiritual advisor *who is not related to Mr. Shockley*, to have a contact visit and administer the communion materials and anointing oils.]")(emphasis in original).

21. Summer and Morgan Shockley appealed the MODOC denial pursuant to MODOC policy. MODOC upheld their original denials based on their status as Lance Shockley's family members. Ex. D; Ex. J.

22. The MODOC offered some accommodation to Mr. Shockley but denied his requests for contact visits with one or both of his designated spiritual advisors. This denial included pre-execution visits for the purpose of praying, receiving communion, and the use of anointing oil in their religious ceremonies. The MODOC further denied Mr. Shockley's request that Morgan Shockley be allowed in the execution chamber to pray with Mr. Shockley as he is executed on October 14, 2025. Ex. M.

23. Mr. Shockley filed an internal grievance with the MODOC on October 8, 2025, and the MODOC denied the grievance on the same date. Ex. Q.

**FACTUAL BACKGROUND**

24. Lance Shockley's Christian faith is central to who he is as a man and how he conducts his life in prison. Lance Shockley has dedicated his life over the last twenty years to the service of

others and to living out Christ's example every day. It is well known within the prison that Lance is seldom without his Bible and will mentor and pray with every inmate that allows him to. Lance is incredibly involved in religious services within the institution and does his best to supplement them as well. *See* Laura Kosta, *A Shoe Repairman with a 'Servant's Heart*,' St. Louis Review (Sept. 25, 2025) https://www.stlouisreview.com/story/a-shoe-repairman-with-a-servants-heart (last visited Oct. 9, 2025); Krisanne Vaillancourt Murphy, *No Life is Beyond Redemption: Renewed Efforts to End Death Penalty in Respect Life Month*, Vatican News (Oct. 9, 2025), https://www.vaticannews.va/en/church/news/2025-10/respect-life-month-catholic-mobilizing-network-death-penalty.html (last visited Oct. 9, 2025) (quoting Archbishop Mark Rivituso as saying that Mr. Shockley is "very devout to his faith."); Laura Kosta, *Archdiocese Launches New Program to End the Death Penalty*, St. Louis Review (Oct. 9, 2025), https://www.stlouisreview.com/story/archdiocese-launches-new-program-to-end-the-death-penalty/ ("[Lance's] ability to articulate and express himself in his depth of faith . . . there is such a conviction there.").

25. The policy's definition of a "spiritual advisor" is a "[c]ommunity spiritual leader of any religious group formally authorized and empowered by a religious body to administer ordinances or sacraments, to perform mandatory rites, counsel, and to conduct religious or spiritual services and studies subject to institutional verification of his credentials." Ex. A at 2.

26. Under Section III.B.2.a. of the MODOC policy, "In the event the clergy or spiritual advisor is an immediate family of the offender, visiting privileges may be provided either as a clergy or spiritual advisor or in accordance with the institutional services procedure regarding offender visitation, but not both." Ex. A 2. MODOC policy therefore does not prohibit immediate family from serving as spiritual advisors.

27. "Immediate family" is defined as "the offender's . . . children/stepchildren . . . ." Ex. A at 2.

6

28. MODOC policies provide a spiritual advisor must apply by submitting a spiritual advisor approval form. Ex. A at 2. The approval form must be accompanied by at least two of the following documents: ordination certificate; listing as clergy or spiritual advisor in a religious organization publication or website; letter of endorsement (on official letterhead) from the respective religious organization; federal income tax filing status as "clergy or minister"; and designation on approved visiting application as clergy or spiritual advisor. Ex. A at 2-3.

29. Both Morgan and Summer Shockley followed the steps to be designated Mr. Shockley's spiritual advisors as required. Ex. B; Ex. C; Ex. G; Ex. H. Pursuant to Section III.B.2.a. of the MODOC policy, Morgan and Summer Shockley have requested privileges as spiritual advisors, rather than as family members.

30. Morgan Shockley was notified on August 21, 2025, by the acting chaplain at Potosi Correctional Center that her application to be a spiritual advisor for her father was denied. Ex. F at 3. The reason provided by Mr. Forbes was that she was a family member and would not be allowed to perform the functions of a spiritual adviser for that reason alone. Ex. F at 3. Morgan Shockey appealed the decision citing the DOC's policy as set forth in Exhibit A. Ex. D at 1.

31. Morgan Shockley's appeal was sent to Aaron B. Davis, Religious and Spiritual Programming Coordinator for the Missouri Department of Corrections. Mr. Davis requested additional documentation from Morgan Shockley and after receiving the paperwork he notified her that she "appears to be qualified to serve as a spiritual advisor." Ex. G at 3. Mr. Davis then informed Morgan that he would "contact the administration of PCC to let them know that you are qualified as an advisor" and that "the facility would need to accommodate you as a spiritual advisor." Ex. G at 3. Mr. Davis emailed a day later at 7:30 AM and clarified his prior approval email saying, "My review is only based on the qualifications. If they have other

7

concerns, they will consult the division director, so you may want to contact PCC to find out if they are changing the denial or not." Ex. G at 1.

32. At the same time Mr. Davis was emailing Morgan Shockley regarding her approval, he was also informing the acting chaplain, Mr. Forbes, and Potosi Correctional Center Warden Heather Cofer that he had approved Morgan's request. Ex. F at 1-3. Mr. Davis informed them of his approval at 3:58 PM on September 25, 2025. *Id.* Warden Cofer emailed Mr. Davis back at 5:07 PM on September 25, 2025, that DOC Director Strid denied her request and that "the decision to deny her as a spiritual advisor will stand." Ex. F at 2. Mr. Davis responded the following morning to Warden Cofer at 7:26 AM and informed her that he "meant to include in my earlier email that if there are safety/security concerns (and there are) then they should be taken to director Strid. I apologize for any confusion." Two minutes later at 7:28 PM Warden Cofer emails back and asks whether "[Morgan] has been contacted." Ex. F at 2. Mr. Davis them responds stating, "When I contacted her, I advised her that I only review it based on the qualifications, so she would need to contact the facility regarding the status of her application." Ex. F at 2.

33. The email timeline shows that Mr. Davis told Warden Cofer that he informed Morgan Shockley that there were concerns with her application and that she should take her concerns to director Strid. Ex. F at 2. At the time he wrote this he had not informed Morgan of any concerns about her application, nor had he suggested she contact Director Strid. When he finally emailed Morgan the following morning, he did not inform her that her appeal was denied, that there were any concerns, nor that she should contact Director Strid as he had told Warden Cofer. Ex. G at 1. Mr. Davis only said to Morgan Shockley, "*if* they have other concerns" but he did not express that any such concerns existed. Ex. G at 1.

8

34. A formal denial was communicated via voicemail to Mr. Shockey's counsel on September 26, 2025, via email from Assistant Missouri Attorney General Michael Spillane.

35. The MODOC communicated its proposed accommodations to Mr. Shockley on October 6, 2025. Ex. M. The MODOC declined to designate either Morgan or Summer Shockley as spiritual advisors. *Id.* In addition, the MODOC denied Mr. Shockley's request for in-person visits with his spiritual advisors for purposes of exercising his religion. *Id.* This included contact visits for purposes of receiving communion and for use of anointing oils in their religious practices. Finally, the MODOC declined to allow Morgan Shockley to be present in the execution chamber to pray with Mr. Shockley if the execution proceeds on October 14, 2025. *Id.*

36. Counsel for Mr. Shockley requested clarification as to several aspects of the MODOC's proposed accommodations and the MODOC provided additional accommodations and some additional clarification. Ex. M. The MODOC continued to deny Mr. Shockley's request for contact visits with his spiritual advisors and for his spiritual advisor designee, Morgan Shockley, to be present with him in the execution chamber. *Id.*

37. Mr. Shockley utilized the prison grievance process to request Morgan Shockley's presence in the execution chamber and in person communion from Summer Shockley. This grievance was filed on October 8, 2025, one day following the Missouri Department of Corrections formal notification to his counsel. The MODOC issued its IRR denial on October 8, 2025. Ex. Q.

38. The IRR denial from MODOC indicates that Morgan Shockley was denied her request to serve as a spiritual advisor stating, "does not meet the requirements to be your spiritual advisor while you are on pre-execution status due to institutional safety and security concerns, which causes a failure to satisfy the background check provision of D 5-3.3III(B) (2) (c) (2)." Ex. Q

9

at 3. The MODOC has not provided any information regarding what, if any, concerns arose during Morgan Shockley's background check.

39. The IRR denial from the MODOC also states that Morgan Shockley's initial application was denied on August 21, 2025, and that the basis for the denial was "D5-3.3III(B)(2)(c)(2), which relates to the safety and security of the institution." Ex. Q at 2. The August 21, 2025, letter from MODOC only stated that "no immediate family member is eligible to be a clergy/spiritual advisor." Ex. F at 3. The letter did not reference any part of MODOC Policy D5-3.3. Morgan Shockley appealed the MODOC decision, Ex. D, but the latest denial indicated for the first time Morgan Shockley's appeal "was improper because the basis for the denial was under D5-3.3III(B)(2)(c)(2)." Ex. Q at 2. The MODOC communications with Morgan Shockley do not reference a specific basis for the denial other than her status as a family member of Lance Shockley. Ex. . The IRR denial argues, however, that concerns about "institutional safety and security . . . was communicated to Morgan Shockley by email on Friday, September 26, 2025 at 7:30 A.M." Ex. Q at 2. The referenced email did not indicate MODOC had made the decision to uphold the denial nor did the email explain that the denial was based on any factor beyond her status as a family member. Ex. G at 3; Ex. F at 3.

40. The IRR denial notes for a second time that Morgan and Summer Shockley's requests to serve as spiritual advisors was denied based on "[t]he background check provision" referenced in "D5-3.3III(B)(2)(c)(2)." Ex. Q at 3. MODOC has not provided any information with respect to the type of background check conducted and, what, if any, concerns resulted from the MODOC's investigation.

41. The IRR denial rejected the proposed alternative requiring Morgan Shockley to sign an agreement not to disclose sensitive institutional information resulting from their presence in the chamber. Ex. Q at 3. The IRR letter suggests previous spiritual advisors violated similar

10

agreements but does not provide the language of these agreements nor does the letter outline what, if any, sensitive information was shared by these prior spiritual advisors that would invalidate future use of similar agreements. Ex. Q at 3. Further, neither Summer nor Morgan has ever caused any problems in the nearly two decades of visiting Mr. Shockley in prison, and there is no evidence that either would violate policy now that they are taking part in MODOC process.

## CLAIMS FOR RELIEF

42. Mr. Shockley re-alleges and incorporates herein by reference all the allegations contained in the proceeding paragraphs of this Complaint.

### First Claim for Relief: Free Exercise of Religion

43. The Free Exercise Clause of the First Amendment commands that "Congress shall make no law . . . prohibiting the free exercise of" religion. U.S. Const. amend. I. The Free Exercise Clause is binding on the states through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

44. "The Free Exercise Clause . . . protects the right of citizens to exercise religious beliefs free of any governmental interference or restraint. Its protections 'pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons,' and it is not violated in the absence of a 'showing of direct governmental compulsion.'" *Tarsney v. O'Keefe*, 225 F.3d 929, 935 (8th Cir. 2000) (first quoting *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 222 (1963), then quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993), and then quoting *Engel v. Vitale*, 370 U.S. 421, 430 (1962)); *see also In re Kemp*, 894 F.3d 900 (8th Cir. 2018) ("The free

exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires. The government may not . . . impose special disabilities on the basis of religious views or religious status . . . ." (quoting *Employment Div., Dept't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990))).

45. The MODOC's refusal to allow Summer Shockley and Morgan Shockley to be with Mr. Shockley in the crucial moments leading to his passage into the afterlife deprives Mr. Shockley of the free exercise of his religion. Summer Shockley and Morgan Shockley are Mr. Shockley's spiritual advisors, and Morgan Shockley's ability to touch and pray over him and Summer Shockley's administration of communion in accordance with Mr. Shockley's religious values and practices. By barring Mr. Shockley's spiritual advisors from being present, the MODOC compels Mr. Shockley to give up the free exercise of his religious beliefs that the First Amendment entitles him to. *See Mahmoud v. Taylor*, 145 S. Ct. 2332, 2386 (2025) ("[The Free Exercise] Clause prohibits the government from compelling individuals, whether directly or indirectly, to give up or violate their religious beliefs."); *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 450 (1988) (the Free Exercise Clause prohibits laws that have a "tendency to coerce individuals into acting contrary to their religious beliefs.").

46. The level of scrutiny to be applied when reviewing policies that hinder an individual's ability to freely exercise his religion depends on whether the law is neutral and generally applicable. *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 531. A law that is "neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* But a law that does not satisfy both requirements "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.*; *see also Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 643 (2018).

47. Here, the MODOC's action is neither neutral nor of general applicability because it specifically targets religious-based activity and religious worship and ultimately suppresses religious practice. *Contra Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) ("Absent evidence of an intent to regulate religious worship, a law is a neutral law of general applicability."). As such, it is subject to the Free Exercise Clause. *But see Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 472 (8th Cir. 1991) (noting that the Supreme Court in *Smith*, 494 U.S. at 879, determined that a neutral law of general applicability that incidentally impinges on religious practice will not be subject to attack under the free exercise clause.").

48. The lack of neutrality and general applicability is particularly salient considering factors like "the historical background of the decision under the challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." *Masterpiece Cakeshop*, 584 U.S. at 539 (quoting *Church of Lukumi Babalu*, 508 U.S. at 540).

49. Considering the circumstances of the MODOC's denial of Mr. Shockley's request for his spiritual advisors in light of MODOC's spiritual advisor policy, "the record here demonstrates that the [MODOC's consideration of [Mr. Shockley's] case was neither tolerant nor respectful of [Mr. Shockley's] religious beliefs." *Masterpiece Cakeshop*, 584 U.S. at 639; *see supra* Factual Background. Indeed, the MODOC's denial is targeted at *Mr. Shockley's* religious practice *specifically*—according to MODOC's state-wide policy, family members are allowed to serve as spiritual advisors to inmates, but it is just Mr. Shockley's family members who are prohibited.

50. Accordingly, because MODOC's denial of Summer Shockley and Morgan Shockley as Mr. Shockley's spiritual advisors is not neutral and of general applicability, the MODOC must demonstrate their denial is supported by a compelling governmental interest and is narrowly tailored to advance that interest. *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 531.

51. The MODOC's reason for denying Mr. Shockley's spiritual advisors is not compelling, especially considering that both daughters are well-familiar with MODOC rules and policies. Both have regularly visited Mr. Shockley for over two decades, since they were children. All of their visits have been conducted without incident and neither has any history of disruption in MODOC prisons. Nevertheless, the MODOC denied the requests for Summer and Morgan Shockley be designated as spiritual advisors and denied the requests to have contact visits with Mr. Shockley as a spiritual advisor that would include praying with him, conducting communion, and the use of anointing oils during the in-person visits. MODOC cited "institutional safety and security" but did not provide any detailed explanation as to why these individuals would otherwise be denied the same access as other, qualified spiritual advisors.

52. Neither Summer Shockley nor Morgan Shockley have given any indication they will disturb the execution if allowed to be present in the spiritual advisor capacity. As such, the MODOC's concerns about institutional security, decorum, and solemnity of the execution are merely speculation. *See Fulton v. Philadelphia*, 593 U.S. 137, 151 (2021) ("Such speculation is insufficient to satisfy respondents' burden." (internal citations omitted)). Speculation without any support "fails to engage in the sort of case-by-case analysis that RLUIPA requires." *Ramirez v. Collier,* 595 U.S. 411, 430 (2022)*; see Holt*, 574 U.S. at 363.

53. Nor is the MODOC's denial of Mr. Shockley's spiritual advisors narrowly tailored to advance the department's interest in institutional safety and security. Despite having a variety of spiritual advisors with different histories and of different backgrounds accompany the condemned into the chamber over the last three years, the MODOC insists now that Morgan Shockley be disallowed from doing the same and Summer Shockley be prevented from being nearby as a spiritual advisor. *See Dunn*, 141 S. Ct. at 725-26 (Kagan, J., concurring) (Alabama and a number of other jurisdictions had spiritual advisors present in the chamber multiple

times without any disturbance of the executions). MODOC expressly allows family members to serve as spiritual advisors.

54. Such a conclusive ban is not the most narrowly tailored "solution." MODOC has other solutions available to ensure Summer Shockley and Morgan Shockley "act responsibly" during the execution. *See id.* at 726. For example, background checks, interviews with both, and a penalty-backed pledge that they will obey the prison's rules are all possible solutions. *Id.* These solutions are especially workable, given both women's history and familiarity with visiting at prisons and the fact that ERDCC mandates all spiritual advisors undergo an orientation and training prior to entering the execution chamber.

55. The MODOC's denying Mr. Shockley his spiritual advisors are unsupported by a compelling governmental interest and it is not narrowly tailored to advance the department's interest in Institutional safety and security. Thus, the MODOC's prohibition on Ms. Summer Shockley and Ms. Morgan Shockley's presence during Mr. Shockley's execution deprives Mr. Shockley of the free exercise of his religious rights, violating the Free Exercise Clause of the First Amendment.

**Second Claim for Relief: RLUIPA**

56. Congress enacted the RLUIPA "to provide very broad protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 35, 356–57 (2015). Indeed, the RLUIPA grants "expansive protection for religious liberty" and affords inmates with "greater protection" than the relevant First Amendment precedents. *Id.* at 358, 361.

57. Under RLUIPA, government and state entities may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution even if the burden results from a rule of general applicability" unless the entity shows that the imposition of the burden

both is in furtherance of a compelling governmental interest and is the least restrictive means of furthering said interest. 42 U.S.C. § 2000cc-1(a) (2000).

58. "Religious exercise" under the RLUIPA is defined broadly as "any exercise of religion whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see Dunn*, 141 S. Ct. at 725 (Kagan, J., concurring) (requiring Alabama to allow a spiritual advisor to pray with and lay hands on inmate Willie Smith during his execution because "Smith understood his minister's presence in the execution chamber as integral to his faith and part of his spiritual search for redemption.").

59. A plaintiff raising a claim under RLUIPA bears the initial burden of making a prima facie case that a prison practice substantially burdens his sincere religious exercise. *See West v. Radtke*, 48 F.4th 836 (7th Cir. 2022). A substantial burden on religious exercise occurs when a prison attaches some meaningful negative consequence to an inmate's religious exercise, forcing him to choose between violating his religion and incurring that negative consequence. *Id.* at 845 (relying on *Holt*, 574 U.S. at 358-59, and *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014)).

60. The MODOC's prohibition on Summer Shockley and Morgan Schockley as spiritual advisors at the time of Mr. Shockley's execution substantially burdens Mr. Shockley's exercise of his sincerely held religious beliefs, which include having his spiritual advisors praying with him and watching over him as he passes to the afterlife.

61. Under the RLUIPA, a prison may not impose a substantial burden on a prisoner's religious exercise unless doing so satisfies strict scrutiny—that is, the challenged policy must be the "least restrictive means of furthering a compelling governmental interest." *Dunn*, 141 S. Ct. at 725. Strict scrutiny is an exceptionally demanding standard under which if any less restrictive means is available for the state to achieve its goals, then they must use it. *Id.*

62. As discussed above, the MODOC's outright prohibition on Mr. Shockley's request to have both Ms. Shockleys serve as his spiritual advisors is unsupported by a compelling governmental interest and is not the least restrictive means to achieve the MODOC's goals. *See* First Claim for Relief: Free Exercise of Religion, *supra; see also Dunn*, 141 S. Ct. at 726 (a state can take a number of measures to ensure security including doing a background check on the minister, interviewing him, and seeking a pledge that he will obey all rules). The RLUIPA places a heightened duty on prison officials to demonstrate, not to just assume, that a plausible, less restrictive alternative would be effective, something the IDOC apparently fails to recognize. *See id.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court provide relief as follows: 1) A declaratory judgment that Missouri Department of Corrections' denial of Summer Shockley and Morgan Shockley as spiritual advisors violates Mr. Shockley's rights under the First Amendment's Free Exercise Clause; 2) A declaratory judgment that the Missouri Department of Corrections' actions violate RLIUPA; and 3) A preliminary and permanent injunction prohibiting Defendants from executing Mr. Shockley until they can do so in a way that does not violate his religious rights.

Respectfully submitted,

*/s/ Jeremy S. Weis*
Jeremy S. Weis, MO Bar No. 51514
Capital Habeas Unit
Federal Public Defender
Western District of Missouri
1000 Walnut St., Ste. 600
Kansas City, MO  64106
(816) 675-0923
E: Jeremy_Weis@FD.org

*/s/ Justin Thompson*

17

JUSTIN THOMPSON
OH Bar # 0078817
Federal Public Defender,
Southern District of Ohio
10W. Broad Street, Ste 1020
Columbus, Ohio 43215
(614)-469-2999
Justin_Thompson@fd.org
