IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LANCE SHOCKLEY,        *Petitioner*, | ) ) ) |
| v. | ) Case No. 25-1513 ) |
| RICHARD ADAMS   Warden,   Eastern Reception and    Diagnostic Correctional Center; HEATHER COFER   Warden,   Potosi Correctional Center; MYLES STRID   Director,    Division of Adult Institutions; TREVOR FOLEY,   Director, Missouri   Department of Corrections,        *Respondents*. | ) ) ) ) ) **DEATH PENALTY CASE** ) **EXECUTION SCHEDULED** ) **OCTOBER 14, 2025,** ) **6:00 PM CST** ) ) ) ) ) ) ) ) ) |

**MOTION FOR PRELIMINARY INJUNCTION –
STAY OF EXECUTION**

Under Rule 65 of the Federal Rules of Civil Procedure, and the All Writs Act, 28 U.S.C. § 1651, Petitioner Lance Shockley respectfully requests a preliminary injunction barring his execution, currently scheduled for October 14, 2025, at 6:00 PM, until this Court has the opportunity to decide the merits of his religious liberties claim.

**INTRODUCTION**

This civil rights action for violation of state and federal civil rights under 42 U.S.C. § 1983 arises out of the Missouri Department of Corrections ("MODOC") denying Mr. Shockley his spiritual advisors, Summer Shockley-Anagnostopolous and Morgan Shockley, who are his family members, during his execution in contravention of MODOC's express policy allowing immediate family

1

members to serve as spiritual advisors to inmates. This denial violates the Free Exercise Clause of the First Amendment and substantially burdens the practice of religion in violation of the Religious Land Use and Institutional Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.

The Free Exercise Clause of the First Amendment prohibits Congress from making a law prohibiting the free exercise of religion. U.S. Const. amend 1; *see, e.g., Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Free Exercise Clause of the First Amendment is incorporated against the States by the Fourteenth Amendment); *Tarsney v. O'Keefe*, 225 F.3d 929, 935 (8th Cir. 2000). RLUIPA grants "expansive protection for religious liberty," affording an inmate with "greater protection" than the relevant First Amendment precedents. *Holt v. Hobbs*, 574 U.S. 352, 358, 361 (2015).

Mr. Shockley faces execution on October 14, 2025, at 6:00 PM. Pursuant to MODOC's spiritual advisor policy, effective October 1, 2016, which allows for immediate family members serving as spiritual advisors: "In the event the clergy or spiritual advisor is an immediate family of the offender, visiting privileges may be provided either as a clergy or spiritual advisor or in accordance with the institutional services procedure regarding offender visitation, but not both." Ex. A at 2. "Immediate family" is defined as "the offender's . . . children/stepchildren . . . ." Ex. A at 1. MODOC policies provide a spiritual advisor must apply by submitting a spiritual advisor approval form. Ex. A at 2. The approval form must be accompanied by at least two of the following documents: ordination certificate; listing as clergy or spiritual advisor in a religious organization publication or website; letter of endorsement (on official letterhead) from the respective religious organization; federal income tax filing status as "clergy or minister"; or designation on approved visiting application as clergy or spiritual advisor. Ex. A at 2-3. Both Summer and Morgan Shockley submitted the requisite documents. Ex. B; Ex. C; Ex. G; Ex. H.

In this civil rights violation complaint filed pursuant to 42 U.S.C. § 1983, Mr. Shockley asserts the MODOC's refusal to allow Morgan Shockley to be present in the chamber to touch and pray over him as he passes into the afterlife, and Summer Shockley to have contact visits as a spiritual advisor to pray with Mr. Shockley, offer communion, and to use anointing oil as his spiritual advisors violates his rights under the Free Exercise Clauses of the First Amendment and substantially burdens the practice of his religion under RLUIPA. Petitioner now seeks a preliminary mandatory injunction ordering that his execution be STAYED.

### STANDARD FOR INJUNCTIVE RELIEF

To prevail on a motion for preliminary injunction, the moving party must demonstrate (1) a probability of success on the merits; (2) the threat of irreparable harm should the preliminary injunction be denied; and (3) the balance between this harm and the harm granting the injunction will cause to the other parties litigant; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 108, 113 (8th Cir. 1991) (en banc).

All factors weigh in favor of granting Mr. Shockley injunctive relief.

**I.     This Court should grant injunctive relief because all four factors weigh in Mr. Shockley's favor, and in favor of protecting his religious rights and values.**

   **A. Mr. Shockley is likely to succeed on the merits.**

Petitioners seeking an injunction must show that there is "fair ground for litigation." *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Likelihood of success does not necessarily mean a greater than fifty percent chance of success if the other factors weigh in the petitioner's favor. *See id.* Although probability of success on the merits is a threshold issue, it is not the singular most important consideration for injunctive relief. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 n.5 (8th Cir. 2008).

Mr. Shockley meets the threshold showing of a "significant possibility of success" because his request to have his spiritual advisors, who also happen to be his daughters, present by his side while

3

the State executes him and to be present in person to administer communion constitutes the free exercise of his religion and is thus protected by the Free Exercise Clause and the RLUIPA. It is also supported by the MODOC's policy, which contemplates immediate family members serving as spiritual advisors for inmates in MODOC's custody. The MODOC's denial of Mr. Shockley's spiritual advisors[1] by his side during his execution, which is a right the Supreme Court has unambiguously upheld, *see, e.g., Ramirez v. Collier*, 595 U.S. 411 (2022), compels Mr. Shockley to give up the free exercise of his constitutionally-guaranteed religious practice. *See, e.g., Mahmoud v. Taylor*, 145 S. Ct. 2332, 2386 (2025) ("[The Free Exercise] Clause prohibits the government from compelling individuals, whether directly or indirectly, to give up or violate their religious beliefs."); *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 450 (1988) (the Free Exercise Clause prohibits laws that have a "tendency to coerce individuals into acting contrary to their religious beliefs.").

Notably, the MODOC has offered no compelling governmental interest for its denial nor has it demonstrated that this is the most narrowly tailored, least restrictive means of achieving its interest in institutional safety and security, as required under the Free Exercise Clause and the RLUIPA for a governmental action that infringes or places a substantial burden on a petitioner's ability to freely exercise his religion. *See Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993); 42 U.S.C. § 2000cc-1(a). Mere speculation that the Ms. Shockley's daughter will in some way disturb the execution is not a compelling reason and is insufficient to justify denying Mr. Shockley access to them as spiritual advisors. *See Fulton v. Philadelphia*, 593 U.S. 137, 151 (2021). Indeed, that speculation is unfounded and "fails to engage in the sort of case-by-case analysis that RLUIPA requires." *Ramirez v. Collier,* 595 U.S. 411, 430 (2022)*; see Holt*, 574 U.S. at 363. In fact, MODOC counsel Gregory Goodwin explained that family members implicate a "*per se* risk" to solemnity, safety, and security in the 24-48

---

[1] MODOC Policy D5-3.3 outlines the policy for approving spiritual advisors in the MDOC Adult Institutions. Ex. A.

4

hours before an execution. Ex. M at 1. Mr. Goodwin went on to explain "[i]n the Department's experience, only a short amount of physical conduct for a brief time can result in health complications due to highly-concentrated opioids" and suggested that the Department has no ability to prevent family members from tampering with IV lines within the chamber. Ex. M at 1. Neither Morgan nor Summer Shockley have any history of drug use or trafficking. Further, Morgan Shockley and Summer Shockley have visited Potosi Correctional Center for virtually their entire lives and are well-familiar with MODOC rules and policies. They have visited the facility without incident and there is no reason to believe that it will change if they serve as spiritual advisors. MODOC have not considered the Shockleys on a case-by-case basis while also determining any family member is a *per se* risk and offering only speculative, unfounded risks.

In any event, barring Morgan Shockley from the chamber as Mr. Shockley's spiritual advisor, is not the least restrictive way of furthering the MODOC's interest in institutional safety and security. Particularly in light of Summer and Morgan Shockley's uneventful history of visiting MODOC facilities, and that all spiritual advisors undergo orientation before they are allowed to be in the execution chamber, there are other more narrowly tailored and less restrictive means MODOC could undertake. For example, for Morgan Shockley to serve as the spiritual advisor during the execution and for Ms. Summer Shockley to administer communion to her father, MODOC could require more extensive background checks, conduct interviews, and/or require them to sign a penalty-backed pledge that they would obey the prison's rules. *See Dunn v. Smith*, 141 S. Ct. 725, 726 (2021) (Kagan, J., concurring in the denial of the application to vacate injunction).[2] Further, any risk of Morgan or

---

[2] MODOC cited *Bucklew v. Precythe*, 587 U.S. 119, 151 n. 5 (2019) for the proposition that family would "obviously" not be allowed in an execution chamber, but that reading is without context. That proposition is referring only to compliance with Alabama code § 15-18-83 (2018) but is not a comment on execution protocol for other states.

Summer Shockley identifying members of the execution team can by mitigated by the team wearing surgical masks or other face coverings to obscure their faces.

The MODOC's refusal to allow Mr. Shockley the presence of Morgan Shockley as his spiritual advisor during his execution and Summer Shockley to administer communion to him before his execution infringes upon the free exercise of his religion and his religious liberty under the RLUIPA. Because there is a strong likelihood Mr. Shockley will establish that the MODOC's actions violate his rights under the Free Exercise Clause and the RLUIPA, this Court should grant injunctive relief and ensure Mr. Shockley is executed only in a constitutional manner that is in accordance with his religious beliefs and values.

**B. Mr. Shockley will be irreparably harmed if a stay is not granted.**

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacies of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). Here, where Mr. Shockley's freedom to engage in well-established religious practice as he dies is at issue, the MODOC's denial of his spiritual advisors clearly presents irreparable harm. *See generally Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (irreparable injury "is necessarily present in capital cases.").

It is well-established in most federal courts, and certainly in this Court and the Eighth Circuit Court of Appeals, that irreparable harm occurs any time a petitioner's First Amendment rights are violated. *See, e.g., Beussink v. Woodland R-IV Sch. Dist.*, 30 F. Supp. 2d 1175, 1180-81 (8th Cir. 1998) ("Irreparable harm is established *any* time a movant's First Amendment rights are violated." (citing *Marcus v. Iowa Pub. Tele.*, 97 F.3d 1137, 1140-41 (8th Cir. 1996) (emphasis in original)); *Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995) ("'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As detailed above, MODOC's refusal to allow Morgan Shockley and Summer Shockley to

6

serve as Mr. Shockley's spiritual advisor during his execution violates his religious liberty under the Free Exercise Clause of the First Amendment, automatically establishing irreparable harm.

If injunctive relief is not granted to ensure Summer Shockley can administer communion and Morgan Shockley can be present in the execution chamber – an accommodation the Supreme Court, the Constitution, and MODOC's own policy recognize as permitted - Mr. Shockley will be unable to engage in protected religious exercise in the final moments of his worldly life; compensation paid to his estate would absolutely not remedy this harm, which is spiritual rather than pecuniary. *See Ramirez*, 595 U.S. at 433. Indeed, because a stay of execution is an equitable remedy, Mr. Shockley has no adequate remedy at law. *See, e.g., Nooner v. Norris*, 491 F.3d 804, 807 (8th Cir. 2007); *see also Timberlake v. Buss*, No. 1:06-cv-1859-RLY-WTLI, 2007 WL 2316451 (S.D. Ind. June 12, 2007).

As a devout follower of Christ, Mr. Shockley's passage from this world into the next is a critical moment in his journey to the heavenly kingdom and eternal life. There is also no question that this request is based on a sincerely held religious belief. *See Ramirez*, 595 U.S. at 425; *see also* Laura Kosta, *A Shoe Repairman with a 'Servant's Heart,'* St. Louis Review (Sept. 25, 2025) https://www.stlouisreview.com/story/a-shoe-repairman-with-a-servants-heart (last visited Oct. 9, 2025); Krisanne Vaillancourt Murphy, *No Life is Beyond Redemption: Renewed Efforts to End Death Penalty in Respect Life Month*, Vatican News (Oct. 9, 2025), https://www.vaticannews.va/en/church/news/2025-10/respect-life-month-catholic-mobilizing-network-death-penalty.html (last visited Oct. 9, 2025) (quoting Archbishop Mark Rivituso as saying that Mr. Shockley is "very devout to his faith."); Laura Kosta, *Archdiocese Launches New Program to End the Death Penalty*, St. Louis Review (Oct. 9, 2025), https://www.stlouisreview.com/story/archdiocese-launches-new-program-to-end-the-death-penalty/ ("[Lance's] ability to articulate and express himself in his depth of faith . . . there is such a conviction there."). It is necessary for his spiritual advisors to be with him to counsel and guide him as he goes. The First Amendment and the RLUIPA recognize

the importance of such religious practices and enforce Mr. Shockley's right and freedom to engage in them.

Denying Mr. Shockley religious guidance and spiritual aid in his final moments is undoubtedly an irreparable harm.

### C. The irreparable harm of unconstitutionally executing Mr. Shockley and depriving him religious guidance as he passes outweighs the State's interest in carrying out an execution.

Although the State has an interest in carrying out executions, it cannot do so in contravention of Mr. Shockley's religious freedoms, especially considering the MODOC's lack of a compelling reason for its refusal and that the refusal is not the least restrictive means of ensuring institutional safety and security. This is particularly the case when the MODOC's refusal is also in contravention of its own policy, which explicitly allows immediate family members to serve as spiritual advisors. Moreover, adherence to the Constitution is one of the State's most fundamental duties.

### D. The public's interest lies in judicial enforcement of religious freedom.

The public's interest would be served by granting Mr. Shockley's religious requests. The public has an interest in ensuring state actors respect the religious rights of all persons and protect all rights granted to the public under the U.S. Constitution. A public denial of a person's constitutional right to the free exercise of religion is a threat to everyone's protections under the Constitution.

Furthermore, executions are carried out in the name of the people of Missouri. It is in the public's interest that executions done on their behalf be lawful. Religious liberties are of critical importance to the people of Missouri, *see, e.g.,* Mo. Const., art I, § 5; Missouri Religious Freedom Restoration Act, Mo. Rev. Stat. § 1.302, and the people of the state have a strong interest in ensuring religious freedom is held in the utmost regard. The State must not be allowed to tread on the religious freedoms of *any* Missourian.

As the petition describes in detail, the religious freedom questions under the RLUIPA and the First Amendment are issues of great public importance. Both Congress and this Supreme Court have recognized the importance of protecting that liberty even for, and maybe especially for, the condemned.

2. **Alternatively, this Court has the power to enter a preliminary injunction imposing a stay of execution under the All Writs Act.**

If the current suit cannot be completely resolved, there is an alternative basis for a stay of execution. It is essential that "[a] death sentence cannot begin to be carried out by the State while substantial legal issues remain outstanding." *Barefoot v. Estelle*, 463 U.S. 880 (1983). Once substantial legal issues are raised, a petitioner is "entitled to a stay of execution to permit due consideration of the merits" if the claim cannot be resolved prior to the scheduled date of the execution. *Id.*

The All Writs Act authorizes "[t]he Supreme Court and all courts established by Acts of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has interpreted the All Writs Act to allow federal courts to "avail itself of auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *United States v. New York Telephone Co.*, 434 U.S. 159, 172-73 (1977). Indeed, unless specifically constrained by an act of Congress, the Act authorizes a court to issue writs any time "the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942). A preliminary injunction under the All Writs Act is appropriate in this case to preserve the integrity of these proceedings and this Court's jurisdiction to decide the case so the Court can enforce its judgment. If this Court cannot determine whether the MODOC's institutional safety and security concerns warrant such a drastic ban on Mr. Shockley's religious rights by October 14, 2025, or the MODOC cannot adjust its execution protocol to account for Mr. Shockley's right to freely exercise his faith by having Morgan Shockley in the

9

execution chamber and allow Summer Shockley to administer communion, this Court can and should utilize the All Writs Act to enjoin his execution until such matters can be resolved.

The need for this Court to issue an injunction to preserve its jurisdiction distinguishes an injunction under the All Writs Act from other injunctions in that this Court can grant the injunction without evaluating the four factors applicable to traditional injunctions. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a preliminary injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *see also United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (affirming grant of injunction under the All Writs Act without regard to the traditional multi-factor test to determine whether to grant an injunction); *De Beers Consol Mines, Ltd. V. United States*, 325 U.S. 212, 219 (1945) (stating, in reviewing a lower court's ruling concerning an injunction under the All Writs Act, that it is necessary to ascertain "what is the usage, and what are the principles of equity applicable in [this] case," without mentioning the traditional injunction requirements).

Thus, alternatively under the All Writs Act, this Court must issue a preliminary injunction to avoid Mr. Shockley's execution prior to the orderly resolution of this case regarding Mr. Shockley's rights under the First Amendment and the RLUIPA.

## Conclusion

FOR THE FOREGOING REASONS, and those set forth in the Complaint under 42 U.S.C. § 1983, Mr. Shockley respectfully requests that this Court grant injunctive relief and prevent his execution.

Respectfully submitted,

*/s/ Jeremy S. Weis*
Jeremy S. Weis, MO Bar No. 51514

        Capital Habeas Unit
        Federal Public Defender
        Western District of Missouri
        1000 Walnut St., Ste. 600
        Kansas City, MO 64106
        (816) 675-0923
        E: Jeremy_Weis@fd.org
        *Attorney for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system and sent it via email to Gregory Goodwin, Office of Missouri Attorney General, at gregory.goodwin@ago.mo.gov.

        /s/ Jeremy S. Weis
        Jeremy S. Weis
        Attorney for Lance Shockley