# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| LANCE C. SHOCKLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:25-CV-01513-SRC |
| ) | |
| ) | **Capital Case** |
| RICHARD ADAMS, et al., ) | **Execution Set for** |
| ) | **6 p.m. October 14, 2025** |
| Respondents. ) | |

**Suggestions in Opposition to Motion for Preliminary Injunction and Suggestions in Opposition to Stay**

This Court should deny Petitioner Lance C. Shockley's motion for a preliminary injunction and stay of execution.

**Standard Governing Stay Requests**

A stay of execution is an equitable remedy that is not available as a matter of right. *Hill v. McDonough,* 547 U.S. 573, 584 (2006). A request for a stay of execution must meet the standard requirements for all other stay applications. *Id.* That standard requires this Court to assess: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm absent a stay; (3) the balance between harm to the movant absent the stay and the injury inflicted on other interested parties if the stay is granted; and (4) the public interest. *See id.* Further, the United States Supreme Court has stated

1

that inequitable delay on behalf of a stay movant provides a basis to deny the request for stay. *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019).

Specifically, in considering stay requests, the Court applies "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill*, 547 U.S. at 584 (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). "[L]ate-breaking changes in position, last-minute claims arising from long-known facts, and other 'attempt[s] at manipulation' can provide a sound basis for denying equitable relief in capital cases." *Ramirez v. Collier,* 595 U.S. 411, 434 (2022) (second brackets in original) (quoting *Gomez v. United States Dist. Ct. for N. Dist. Ct. of Cal.,* 503 U.S. 653, 654 (1992)). The "last-minute nature of an application" may be reason enough to deny a stay. *Id.*

## Analysis

Shockley requests a preliminary injunction and requests a stay of his execution because he wishes his immediate family members to be allowed to have contact visits with him and to be present in the execution chamber because he has attempted to designate them as his spiritual advisors. Doc. 2. This Court should deny the motion for stay because Shockley's request fails on all four stay factors and because Shockley's extreme delay in bringing this suit is itself a sufficient reason to deny relief. Shockley also requests that this Court

2

grant what amounts to an administrative stay under the All Writs Act, but Shockley's claims are meritless, and his delay strongly counsels against a stay in that context as well.

I.   **This Court should deny Shockley's request for a stay.**

Shockley's allegations fail to satisfy any of the factors for a stay, let alone every factor necessary for a stay. Thus, this Court should deny Shockley's request for a preliminary injunction and a stay.

   A.   **Shockley has no probability of success on the merits of the claims raised in this action.**

The United States Supreme Court has indicated that family members of a condemned murderer would "obviously" not be allowed in the execution chamber. *Bucklew*, 587 U.S. at 150 n.5. The Missouri Department of Corrections ("the Department") pointed this out to Shockley, and his response in this Court is to claim that the Supreme Court's guidance applies only to the Alabama statute. Doc. 2 at 5 n.2. But Missouri's law is similar to Alabama's statute. *Compare* Mo. Rev. Stat. § 546.740 (2016) *with* Ala. Code § 15-18-83 (2018). Moreover, the Supreme Court could not have been more clear: state law "obviously" would not have allowed relatives or friends of the condemned person into the execution chamber. *Bucklew*, 587 U.S. at 150 n.5. Shockley fails to explain why Missouri law would be any different, or, more importantly, why the United States Supreme Court would rule that a condemned murderer

3

would be allowed to have a close family member in the execution chamber. They would not.

The decision not to permit family members to have contact visits or to be present in the execution chamber during the execution is based on institutional safety and security concerns and to protect the solemnity and dignity of the execution—not religious discrimination. As the Director of Adult Institutions has explained, the Department declined to designate Shockley's family members as spiritual advisors due to safety and security concerns, including

> 10. Physical contact with family members imminently preceding an execution poses a significant institutional safety and security risk, even beyond the risk posed by contact with non-family members. Physical contact can significantly interfere with the institution's duties in preventing interference with the execution; managing inmate behavior, including physical, psychological, and emotional behaviors; preventing the transfer of contraband; and protecting staff members and visitors. There are any number of ways a family member could interfere with an impending execution, including through the introduction of various drugs which can act through skin-to-skin contact but are otherwise very difficult to screen for. One could use physical contact to impact or otherwise alter the offender's vital signs and/ or could attempt to delay the execution. Even inadvertent action in the close quarters of the execution chamber can cause significant and dangerous results. A stumble or fall while inside the chamber could dislodge or disrupt I.V. lines, restraints, or even pillows used for the offender's comfort. These inadvertent actions become all the more likely when the individual inside the execution chamber has an even closer relationship with the offender, such as a father-daughter relationship. The significant emotions involved in an execution warrant even additional precautions, especially if an offender's family member was given direct and ample opportunity to interfere with the carrying out of the execution, the solemnity and decorum of the execution chamber, prison officials' responses

4

> during any potential emergency, etc. Here, the applicants are Lance Shockley's own daughters. This intimate connection, along with the intense emotions surrounding an execution, have an even greater potential to exacerbate the psychological distress for all involved, which, in turn, could lead to even more volatile reactions.

Resp. Ex. C at 3. And as Warden Heather Cofer explained, Morgan Shockley was notified of this determination. Resp. Ex. D at 2.

Shockley has suggested that this case is controlled by *Ramirez v. Collier*, 595 U.S. 511 (2022). But this case is unlike *Ramirez*, in which a pastor sought to be allowed to lay hands on the condemned, and it is also unlike *Murphy v. Collier*, 587 U.S. 901 (2019), where a spiritual advisor was not allowed into the execution chamber based on his denomination. As explained in more detail in the motion to dismiss, Shockley's case is really a case about institutional safety and security.

Accordingly, Shockley has failed to demonstrate a strong likelihood of success on the merits.

### B.  There is no threat of irreparable harm absent a stay.

Here, the alleged point of a stay would be to allow Shockley to litigate meritorious challenges raised in his § 1983 suit. And the potential harm from denying a stay would be that Shockley will not be able to litigate those meritorious claims. But, as discussed above, Shockley has no meritorious claims.

5

By any reasonable definition, no irreparable harm will flow from not allowing Shockley to continue delaying the execution of his sentence by presenting meritless claims. Shockley has no right to delay the execution of Missouri's lawful sentence and judgment, and he is not harmed by being prohibited from engaging in meritless litigation.

> **C.  The balance of harms between Shockley and other interested parties weighs heavily against the issuance of a stay.**

The State of Missouri, the crime victims—for whom the case has gone on for decades without resolution—and our shared criminal justice system are all harmed by the never-ending litigation of meritless claims. *See Bucklew*, 587 U.S. at 149–50 (noting that the State and crime victims have an important interest in the timely enforcement of a sentence and that the people of Missouri and crime victims deserve better than the excessive delays that now routinely occur before the enforcement of a death sentence); *see also Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) (noting the criminal trial is "a decisive and portentous event" that should be the "main event" in a criminal case, "rather than a 'tryout on the road'" for later litigation).

This harm far outweighs any injury Shockley alleges he may sustain from not being allowed to delay the execution of his sentence through meritless litigation—something he has no right to in the first place. So, he is not harmed. "Only with real finality can the victims of crime move forward knowing the

6

moral judgment will be carried out." *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (quoting *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Id.* (quoting *Calderon*, 523 U.S. at 556). Shockley cannot demonstrate that the harms, on balance, are in his favor. Instead, the balance of the harms here weighs heavily in favor of denying the stay.

> **D.  The public interest is in finality and the performance of the State's lawful and long-delayed criminal judgment.**

"Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Bucklew*, 587 U.S. at 149 (quoting *Hill*, 547 U.S. at 584). "Those interests have been frustrated in this case." *Id.* Shockley has exhausted nearly every state and federal avenue for review. And each and every time, Shockley's claims have been found to be meritless. Put simply, Shockley has attempted to secure delay through lawsuit after lawsuit. *See Bucklew*, 1587 U.S. at 149. "The people of Missouri, the surviving victims of [Shockley's] crimes, and others like them deserve better." *Id.*

Now, at the eleventh hour, Shockley seeks further delay to raise meritless claims. The public interest lies in the lawful judgment of the State being carried out without additional delay. Shockley is guilty of first-degree murder, a court sentenced him to death, and he has been afforded multiple

7

layers of review. This Court should not delay the execution of the State's lawful judgment any longer.

## II. Shockley's inequitable delay provides a basis for denying the motion for stay.

In *Bucklew*, the United States Supreme Court discussed vacating a stay granted to allow a challenge made to who could be present in the execution chamber. 587 U.S. 150 n.5. In discussing the vacatur of a stay of execution in another case, *Dunn v. Ray*, 586 U.S. 1138 (2019), the United States Supreme Court criticized the petitioner for not asking for clarification on who could be in the execution chamber until fifteen days before the execution and for not bringing suit until ten days before the execution. *Id*. The Court found the petitioner's "delay implicated the 'strong equitable presumption' that no stay should be granted 'where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Bucklew*, 587 U.S. 150 n.5 (quoting Hill, 547 U.S. at 584).

Here, Shockley did not raise the issues presented in this action with the Department until twelve days before his scheduled execution and did not file the instant suit until six days before the execution—including a weekend and a federal holiday. Resp. Ex. B at 17; Doc. 1. In *Bucklew*, the United States Supreme Court noted that that the relevant statute naming persons who could attend an execution, named persons who "obviously would not be allowed into

8

the chamber itself," including "relatives or friends of the condemned person." *Bucklew,* 573 U.S. at 150 n.5 (quoting Ala. Code § 15-18-83 (2018)). Shockley was therefore on notice, as any reasonable person would be, that there would be an issue with having close family members of the condemned person in the chamber itself. But he did not seek to clarify the issue or bring suit until the eleventh hour.

In an email on September 11, 2025, counsel for Shockley indicated Shockley had not made any decisions on who he wished to attend the execution. Resp. Ex. B at 4. On September 26, 2025, Shockley's counsel was informed by phone that members of Shockley's immediate family could not have contact visits with Shockley, and Shockley's counsel followed up by email on September 29, 2025. Resp. Ex. B at 10. On October 2, 2025, Shockley first inquired about whether his daughters would be allowed to be spiritual advisors at the prison at which he was to be executed, which is located in Bonne Terre, Missouri, as opposed to the prison at which he had previously resided, which is located in Potosi, Missouri, and whether his younger daughter would be permitted in the execution chamber. Resp. Ex. B at 17. This was only twelve days before the scheduled execution. Id. Counsel for Shockley was provided with a detailed explanation of the Department's reasoning for not providing contact visits between Shockley and his daughters and for not allowing their presence in the execution chamber. Resp. Ex. B at 29–30. On October 7, 2025,

9

Shockley, through counsel, threatened a lawsuit unless the matter could be worked out by the following morning. Resp. Ex. B at 26.

Shockley's inexcusable delay is inexplicable, and it is a sufficient basis to deny his request for a stay. And it is also part of a larger pattern of delay. As this Court and the Missouri Supreme Court have observed, Shockley has repeatedly engaged in a litigation strategy designed to delay. *See, e.g., Shockley v. Crews*, 696 F. Supp. 3d 589, 620 (E.D. Mo. 2023) (finding that "Shockley has intentionally delayed this Court's proceedings"); Show Cause Order at *1, *Shockley v. Crews*, 4:19-CV-02520-SRC, Document 76 (E.D. Mo. Sept. 29, 2023); Order at *2, *5–*6, *State v. Shockley*, SC90286 (Mo. Oct. 8, 2025)

As stated above "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Bucklew*, 587 U.S. at 149 (quoting *Hill*, 547 U.S. at 584). Shockley committed his crime two decades ago. He has exhausted every ordinary state and federal avenue for review and his claims have been found to be meritless.

Shockley committed first-degree murder of a Missouri Highway Patrol Officer in 2005. *State v. Shockley*, 410 S.W.3d 179, 183 (Mo. 2013). The evidence supporting the conviction was strong. *Id.* at 183–185; *id.* at 202 (characterizing the evidence as "strong"). The State of Missouri moved to set an execution date on March 31, 2025. Docket Sheet, *State v. Shockley*, SC90286 (Mo. Mar. 31, 2025). On June 18, 2025, the Missouri Supreme Court granted

10

the motion and scheduled Shockley to be executed on October 14, 2025. Order, *State v. Shockley*, SC90286 (Mo. June 18, 2025). Shockley nevertheless delayed until October 2, 2025, to first inquire about the spiritual advisor issues underlying this petition.

On this record, it appears that delay for the sake of delay is Shockley's ultimate goal. But "[t]he people of Missouri, the surviving victims of [Shockley's] crimes, and others like them deserve better." *Bucklew*, 587 U.S. at 149. The strong equitable presumption against granting a stay for litigation that could have been completed without a stay if timely filed should be enforced here. *See Hill*, 547 U.S. at 584. Shockley's request for a stay should be denied.

### III. The All Writs Act does not provide an independent and adequate basis for a stay.

In order to obtain a stay, Shockley invokes this Court's authority under the All Writs Act. Doc. 2 at 9–10. But the All Writs Act does not aid Shockley. As an initial matter, the All Writs Act alone does not create independent subject-matter jurisdiction. *See United States v. Denedo*, 556 U.S. 902, 914 (2009); *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002); *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 821 (8th Cir. 2009). Additionally, Shockley has invoked the All Writs Act as essentially a request for an administrative stay. Doc. 2 at 9–10. But, as described above, Shockley has unreasonably delayed in bringing this case at

11

the eleventh hour. Shockley cannot delay for days in bringing his claim, and then protest that the Court does not have sufficient time to resolve his claim. In other words, delay for the sake of delay is a valid reason to deny a stay. *Hill,* 547 U.S. at 584.

## Conclusion

This Court should deny the motion for a preliminary injunction and a stay of execution.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Attorney General

*/s/ Michael J. Spillane*
Michael J. Spillane
Assistant Attorney General
Missouri Bar #40704
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1307
(573) 751-2096 Fax
mike.spillane@ago.mo.gov

*/s/ Kirsten Pryde*
Kirsten Pryde
Assistant Attorney General
Missouri Bar #76318
P.O. Box 899
Jefferson City, MO 65102
(573) 751-0843
(573) 751-2096 Fax
Kirsten.Pryde@ago.mo.gov

*/s/ Gregory M. Goodwin*
Gregory M. Goodwin
Assistant Attorney General
Missouri Bar #65929
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7017
(573) 751-2096 Fax
Gregory.Goodwin@ago.mo.gov

*/s/ Tyler A. Dodd*
Tyler A. Dodd
Assistant Attorney General
Missouri Bar #75531
P.O. Box 899
Jefferson City, MO 65102
(573) 751-0338
(573) 751-2096 Fax
Tyler.Dodd@ago.mo.gov

Attorneys for Respondents

## **Certificate of Service**

I certify that I filed this document, and any attachments, using the CM/ECF filing system on October 10, 2025. All counsel of record will receive electronic service by operation of the CM/ECF filing system.

*/s/ Kirsten Pryde*

Kirsten Pryde
Assistant Attorney General